**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JMR HOLDINGS, LLC, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> VALLEY FORGE INSURANCE COMPANY, <br><br> *Defendant*. | Civil Action No.: 2:21-CV-00839 |

**DEFENDANT VALLEY FORGE INSURANCE COMPANY'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant Valley Forge Insurance Company seeks dismissal of the First Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The legal contentions and authorities supporting dismissal are set forth in the accompanying brief, which is incorporated here by reference.

Dated: May 5, 2021

Respectfully submitted,

*/s/ Matthew A. Goldberg*
Matthew A. Goldberg
Ilana H. Eisenstein
Nathan P. Heller
Timothy P. Pfenninger
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
matthew.goldberg@us.dlapiper.com
ilana.eisenstein@us.dlapiper.com
nathan.heller@us.dlapiper.com
timothy.pfenninger@us.dlapiper.com

*Counsel for Defendant Valley Forge
Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JMR HOLDINGS, LLC, individually and on behalf of all others similarly situated, | Civil Action No.: 2:21-CV-00839 |
| *Plaintiff*, | |
| v. | |
| VALLEY FORGE INSURANCE COMPANY, | |
| *Defendant*. | |

**DEFENDANT VALLEY FORGE INSURANCE COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED**
**COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    STATEMENT OF FACTS .......................................................................................3

       A.     The Parties ....................................................................................................3

       B.     Government Orders Responding to the COVID-19 Pandemic and
              Plaintiff's Alleged Suspension of Business Activities.................................3

       C.     The Policy .....................................................................................................4

       D.     Plaintiff's Insurance Claim and this Lawsuit................................................6

III.   LEGAL STANDARD...............................................................................................7

IV.    ARGUMENT ............................................................................................................9

       A.     Plaintiff Is Not Entitled to Business Income, Extra Expense, or Dependent
              Property Coverage ........................................................................................9

              1.     The Amended Complaint lacks factual allegations to establish a
                    direct physical loss of or damage to either the Covered Property or
                    any Dependent Property.......................................................................9

              2.     Plaintiff does not allege a period of restoration ...............................18

       B.     Plaintiff Is Not Entitled to Civil Authority Coverage ...............................19

              1.     Plaintiff does not allege the Orders were issued due to a direct
                    physical loss of or damage to property other than the insured
                    property ...............................................................................................19

              2.     Plaintiff does not plausibly allege that the Orders prohibited access
                    to the covered property ......................................................................20

       C.     The Absence of a Virus Exclusion is Irrelevant ........................................22

V.     CONCLUSION.......................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Insurance Co.*,
   No. 20-04471, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) .......................................1, 11, 16

*4431, Inc. v. Cincinnati Ins. Co.*,
   No. 20-4396, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020)................................................15, 23

*54th St. Ltd. Partners LP v. Fidelity & Guar. Ins. Co.*,
   306 A.D.2d 67 (1st Dep't 2003) ....................................................................................20

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
   308 F. Supp. 2d 331 (S.D.N.Y. 2004)..............................................................................20

*Arash Emami, M.D., P.C., Inc. v. CNA*,
   No. 20-18792, 2021 WL 1137997 (D.N.J. Mar. 11, 2021) .....................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................7, 16

*BBMS, LLC* v. *Cont'l Cas. Co.*,
   No. 20-03530, 2020 WL 7260035 (W.D. Mo. Nov. 30, 2020) .......................................14, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................8, 22

*Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co.*,
   No. 20-11771, 2020 WL 7338081 (D.N.J. Dec. 14, 2020)....................................................14

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
   No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) ....................................................21

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)...........................................................................................22

*Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*,
   No. 20-354, 2021 WL 601880 (D.N.M. Feb. 16, 2021) .......................................................15

*Clear Hearing Solutions, LLC* v. *Cont'l Cas. Co.*,
   No. 20-3454, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021)................................................15, 18

*Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.*,
   98 N.Y.2d 208 (2002) ...................................................................................................9

*Daneli Shoe Co. v. Valley Forge Ins. Co.*,
No. 20-1195, 2021 WL 1112710 (S.D. Cal. Mar. 17, 2021) ..................................................14

*DeBenedictis v. Merrill Lynch & Co.*,
492 F.3d 209 (3d Cir. 2007).............................................................................................8

*DeMoura v. Cont'l Cas. Co.*,
No. 20-2912, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021)..................................................1, 11

*Food For Thought Caterers Corp. v. Sentinel Ins. Co.*,
No. 20-3418, 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021).............................................. *passim*

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).............................................................................................7

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
No. 20-2939, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) .....................................................14

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
No. 20-275, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020)..............................................13, 18

*Humans & Resources, LLC v. Firstline Nat'l Ins. Co.*,
No. 20-2152, 2021 WL 75775 (E.D. Pa. Jan. 8, 2021)...................................................17, 18

*i2i Optique LLC v. Valley Forge Ins. Co.*,
No. 20-3360, 2021 WL 268645 (E.D. Pa. Jan. 27, 2021) ......................................................8

*J.C. Penney Life Ins. Co. v. Pilosi*,
393 F.3d 356 (3d Cir. 2004)..............................................................................................8

*JD Cinemas, Inc. v. Northfield Ins. Co.*,
No. 609910/2020 (N.Y. Sup. Ct. Mar. 8, 2021) ............................................................11, 12

*Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Insurance Co. of the Midwest, Inc.*,
No. 20-2777, 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021)..............................................1, 11

*K D Unlimited Inc. v. Owners Ins. Co.*,
No. 20-2163, 2021 WL 81660 (N.D. Ga. Jan. 5, 2021).........................................................14

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
No. 20-1136, 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021)......................................... *passim*

*Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*,
136 A.D.3d 52 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 675 (2017) ................................................9

*Malaube, LLC v. Greenwich Ins. Co.*,
No. 20-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ................................................14

iii

*McCarthy v. Am. Int'l Grp.*,
  283 F.3d 121 (2d Cir. 2002)...................................................................................18

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  No. 20-04612, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) ........................................ *passim*

*Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*,
  No. 20-701, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021)..................................................17

*Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*,
  No. 20-03461, 2020 WL 7495180 (N.D. Cal. Dec. 21, 2020)...........................................15, 23

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014)............................................................... *passim*

*O'Brien Sales and Mktg., Inc. v. Transp. Ins. Co.*,
  No. 20-02951, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021)...............................................14

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
  No. 20-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)..................................................13

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
  No. 20-907, 2020 WL 5847570 (S.D. Cal. Oct. 1, 2020)....................................................17

*Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*,
  No. 20-00087, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020)...............................................14

*Rose's 1, LLC v. Erie Ins. Exch.*,
  No. 20-2424, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020)..........................................22

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
  302 A.D.2d 1 (1st Dep't 2002) ................................................................... *passim*

*Rye Ridge Corp. v. The Cincinnati Ins. Co.*,
  No. 20-7132, 2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021) ...................................1, 11, 16, 23

*S. Florida ENT Assocs., Inc. v. Hartford Fire Ins. Co.*,
  20-23677, 2020 WL 6864560 (S.D. Fla. Nov. 13, 2020) .....................................................14

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  No. 20-2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020)........................................14, 17, 19

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
  No. 20-07834, 2020 WL 7253378 (C.D. Cal. Nov. 24, 2020) ...................................13, 15, 23

*Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*,
  No. 20-3350, 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021)..............................................1, 11

*Shuder v. McDonald's Corp.*,
    859 F.2d 266 (3d Cir. 1988)...............................................................................8

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 09-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ...................................20

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
    No. 605985/2020 (N.Y. Sup. Ct. Feb. 10, 2021) ...........................................11, 12

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
    No. 20-754, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020).............................11, 17

*Torgerson Props. Inc. v. Cont'l Cas. Co.*,
    No. 20-2184, 2021 WL 615416 (D. Minn. Feb. 17, 2021)....................................14

*United Air Lines v. Ins. Co. of. Pa.*,
    439 F.3d 128 (2d Cir. 2006).............................................................................20

*Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    25 N.Y.3d 675 (2015) ......................................................................................8

*Visconti Bus Service LLC v. Utica National*,
    No. EF005750-2020, 2021 WL 609851 (N.Y. Super. Ct. Feb. 12, 2021)..........11, 12

*White v. Cont'l Cas. Co.*,
    9 N.Y.3d 264 (2007) ........................................................................................8

## Other Authorities

Black's Law Dictionary ....................................................................................10

Fed. R. Civ. P. 8(a) ...........................................................................................7

Rule 12(b)(6)....................................................................................................7

## I.   __INTRODUCTION__

This insurance coverage action involves claims for alleged business losses related to the COVID-19 pandemic. Plaintiff JMR Holdings, LLC operates a photography business located in New York City at a property insured by Valley Forge Insurance Company. Plaintiff, after amending its original complaint, seeks a declaration of coverage under the provisions of its insurance policy providing Business Income, Extra Expense, Dependent Property, and Civil Authority Coverage.[1] However, under the unambiguous terms of Plaintiff's policy, losses resulting from executive orders following the COVID-19 outbreak are not covered. This is because Plaintiff has not plausibly alleged, and cannot plausibly allege, that the government orders or the COVID-19 virus caused "physical loss of or damage to" any relevant property.

This action is not novel, and the Court need not write on a blank slate. Plaintiffs across the country have filed similar claims against Valley Forge and other insurers. Claims brought under New York law—as is the case here—have nearly all been dismissed. *See, e.g.*, *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, No. 20-1136, 2021 WL 1600831, at *3-4 (W.D.N.Y. Apr. 23, 2021); *Rye Ridge Corp. v. The Cincinnati Ins. Co.*, No. 20-7132, 2021 WL 1600475, at *2 (S.D.N.Y. Apr. 23, 2021); *Food For Thought Caterers Corp. v. Sentinel Ins. Co.*, No. 20-3418, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021); *see also Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Insurance Co. of the Midwest, Inc.*, No. 20-2777, 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-3350, 2021 WL 1034259, at *6 (S.D.N.Y. Mar. 18, 2021) (report and recommendation, collecting cases); *DeMoura v. Cont'l Cas. Co.*, No. 20-2912, 2021 WL 848840, at *5-6 (E.D.N.Y. Mar. 5, 2021); *10012 Holdings, Inc. v. Sentinel*

---

[1] Plaintiff also seeks to represent a putative class comprised of "[a]ll insureds of [Valley Forge] who have suffered business interruption and lost income as a result of Civil Authority Orders issued in response to the COVID-19 pandemic." Am. Compl. at ¶ 89.

*Insurance Co.*, No. 20-04471, 2020 WL 7360252, at *2 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.,* No. 20-04612, 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020) (collecting cases). Indeed, even outside of New York, the "great majority of courts that have addressed th[e] issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use" of property fails to state a cause of action. *Food For Thought*, 2021 WL 860345, at *4 (collecting cases). This Court should follow the nationwide consensus and dismiss Plaintiff's request for a declaration of coverage for the following reasons:

- ***First***, Plaintiff does not allege that its purported losses were caused by direct physical loss of or damage to the covered property or a specific dependent property. This compels dismissal. Coverage under the policy's Business Income, Extra Expense, and Dependent Property provisions is conditioned on a direct, tangible, physical alteration to the insured or dependent premises. Courts have routinely found that claims resulting from the COVID-19 pandemic and related governmental orders do not trigger coverage because neither satisfies the policy language requiring a *physical loss of or physical damage to* an insured or dependent property. Further, Plaintiff's request for a declaration of coverage under the Dependent Property endorsement must be independently rejected because Plaintiff has not even identified a dependent property subject to this action.

- ***Second***, as to Civil Authority coverage, Plaintiff fails to plausibly allege that the governmental orders concerning the spread of COVID-19 were either (1) issued because of direct physical loss of or damage to property other than Plaintiff's

2

property or (2) prohibited Plaintiff from accessing its property. These pleading failures are insurmountable.

- **Third**, Plaintiff cannot salvage its coverage claim by relying on the alleged absence of an exclusion related to damage caused by a virus. An exclusion (or the absence of one) only becomes relevant once an insured has established coverage for a loss, which has not happened here. In any event, Plaintiff is mistaken. The policy at issue does contain an exclusion that bars the requested coverage.

## II.   STATEMENT OF FACTS

### A.   The Parties

Plaintiff JMR Holdings, LLC is a limited liability company operating a photography business with a primary, insured location at 500 W 30th Street, Apartment 30K, New York, New York 10001 (the "Covered Property"). Am. Compl. at ¶ 4. Plaintiff is wholly owned by Julien McRoberts, a resident and citizen of New York. *Id.* Defendant Valley Forge Insurance Company ("Valley Forge") is an insurance company with a principal place of business in Pennsylvania. *Id.* at ¶ 5. Valley Forge offers insurance policies to consumers in many states, including New York. *Id.*

### B.   Government Orders Responding to the COVID-19 Pandemic and Plaintiff's Alleged Suspension of Business Activities

Plaintiff alleges that it suspended its business operations and was denied access to certain unidentified dependent properties in response to executive orders issued by the Governor of New York between March 7, 2020 and April 17, 2020 (the "Orders"). Am. Compl. at ¶¶ 60-63, 70, 76; *see also* Declaration of Matthew Goldberg ("Goldberg Decl."), Exs. A-D (Orders dated March 7, 12, 20, and April 15, 2020, respectively). Plaintiff does not cite the terms of these Orders. Nor does Plaintiff attach the Orders to its Amended Complaint. Plaintiff instead alleges, in broad

3

strokes, that the Orders were issued with the goal of limiting the spread of the COVID-19 virus and: (1) imposed restrictions on large gatherings; (2) required non-essential workers to stay at home through at least May 15, 2020; and (3) required all individuals over the age of two to wear a face covering when in public. *See id.* at ¶¶ 60-63. Plaintiff then concludes—without referencing a single order issued by a relevant public official even purporting to require the closure of any business or property—that these orders "forced" it to "suspend operations of its business" and rendered the unidentified properties "substantially unusable." *Id.* at ¶¶ 73, 81. At the same time, Plaintiff does not, and cannot, allege that any of the Orders were issued as a result of physical loss of or damage to property. *See id.* at ¶ 77 ("The civil authority Orders entered by the state and local government were in the exercise of authority to protect the public and minimize the risk of spread of disease.").

### C.    The Policy

Plaintiff purchased a CNA Connect Policy, No. B 6024700178, for the period February 1, 2020 to February 1, 2021 ("the Policy"), through Insureon, an insurance broker. *See* Am. Compl. at ¶ 6-7; *see also id.*, Ex. 1 (the Policy) at 6.[2] Plaintiff asserts that its claims fall under the Policy's Business Income and Extra Expense, Civil Authority, and Dependent Property provisions. *See, e.g.*, Am. Compl. at ¶¶ 8-12. A threshold requirement for coverage under each of these provisions is "direct physical loss of or damage to property" at the insured premises (for Business Income and Extra Expense coverage), or at premises other than those belonging to Plaintiff (for Civil Authority and Dependent Property coverage). *Id.*, Ex. 1 at 42, 66, 142.

---

[2] Citations to pages of the Policy refer to the ECF pagination due to the multiple sections included in that document.

The Business Income and Extra Expense Endorsement provides coverage for lost business income incurred due to suspension of an insured's operations because of a "direct physical loss of or damage to" the Covered Property.  The relevant language provides:

> b.    We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' ***must be caused by direct physical loss of or damage to property*** at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.*, Ex. 1 at 42 (emphasis added).  As relevant here, the Policy defines "suspension" as the "partial or complete cessation of [the insured's] business activities," and "operations" as "the type of [the insured's] business activities occurring at the described premises and tenantability of the described premises."  *Id.*, Ex. 1 at 37, 39. "Period of restoration" means the following:

> [T]he period of time that:
> a.    ***Begins with the date of direct physical loss or damage*** caused by or resulting from any Covered Cause of Loss at the described premises; and
> b.    ***Ends on the earlier of***
>        (1)    The ***date when the property at the described premises should be repaired, rebuilt or replaced*** with reasonable speed and similar quality; or
>        (2)    The ***date when business is resumed at a new permanent location***.

*Id.*, Ex. 1 at 37 (emphasis added).

The Dependent Property Endorsement provides similar coverage for lost business income incurred due to suspension of an insured's operations because of a "direct physical loss or damage at the premises of" a dependent property. *Id.*, Ex. 1 at 142. A dependent property is a "property ***operated by other*** whom you depend on to:"

> a.    Deliver materials or services . . . to you, or to others for your account (Contributing Locations);
> b.    Accept your products or services (Recipient Locations)

> c.     Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or
>
> d.     Attract customers to your business (Leader Locations).

*Id.* (emphasis added). Plaintiff does not identify any specific dependent property that incurred a physical loss or damage here.[3]

The Civil Authority provision grants coverage for lost business income when a civil authority—*i.e.*, a government entity—completely prohibits access to the Covered Property because of "direct physical loss of or damage to property at locations" nearby but separate from the insured premises. The relevant language provides:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be ***due to direct physical loss of or damage to property at locations, other than described premises***, caused by or resulting from a Covered Cause of Loss.

*Id.*, Ex. 1 at 66 (emphasis added).

> ### D.     <u>Plaintiff's Insurance Claim and this Lawsuit</u>

Following a denial of coverage under the Policy, Plaintiff commenced this action seeking a declaration that coverage exists under the Policy for alleged losses resulting from the COVID-19 pandemic and related Orders. *See* ECF No. 1; Am. Compl. at ¶¶ 98-108. Plaintiff alleges that as a result of the Orders, it was "forced to suspend operations of its business" in order to "protect the public and minimize the risk of spread of" COVID-19. Am. Compl. at ¶¶ 73, 76-77. Plaintiff also alleges that compliance with the Orders impacted its use of unidentified dependent properties.

---

[3] Plaintiff alleges that a dependent property could be "the property of one of [its] clients" but does not identify any particular property that suffered physical loss or damage or that was affected by one of the Orders. Am. Compl. at ¶ 12.

Specifically, Plaintiff contends that, following the Orders, unidentified dependent properties became "unusable in the way that they had been used before the Pandemic." *Id.* at ¶ 81. As discussed above, Plaintiff does not plausibly allege that any portion of the Orders specifically prohibited access to its business premises or that all business-related activities at the Covered Property or dependent properties were foreclosed by the Orders.

Based on its purported suspension of business activity at the Covered Property and unidentified dependent properties, Plaintiff alleges that it is entitled to coverage under the Policy for "property damage" caused by the COVID-19 virus. *See, e.g.*, *id.* at ¶¶ 10, 14. Notably, Plaintiff does not seek a declaration that the coronavirus was or continues to be physically present in or at the Covered Property or one of the unidentified dependent properties. Nor does Plaintiff allege that the coronavirus was ever actually present at any *specific* dependent property.[4] And even if Plaintiff had made such allegations, the presence of the virus at a location does not trigger coverage because it does not cause a physical loss of or damage to property.

## III.  **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* Fed. R. Civ. P. 8(a). It must state "nonconclusory factual allegation[s]" to support a plausible inference that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 680. Although courts must accept as true all well-pleaded factual allegations and the reasonable inferences drawn therefrom,

---

[4] Plaintiff does allege that "COVID-19 was in the Dependent Properties before they were required to shut down." Am. Compl. at ¶ 80. But this conclusory allegation is not plausible as Plaintiff fails to specifically identify a single dependent property, much less such a property that contained COVID-19.

*DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007), this does not include legal conclusions couched as factual allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Against that procedural backdrop, New York law applies to this diversity action. *See J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360-361 (3d Cir. 2004).[5] Under New York law, insurance policies are construed in accordance with well-established principles of contract interpretation. *See White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007). Courts apply policy terms as defined in the document or, when not defined, as read "according to common speech and consistent with the reasonable expectations of the average insured." *See Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015) (internal quotation marks omitted). Unambiguous policy provisions are given "their plain and ordinary meaning," and interpretive issues are "a question of law for the court." *White*, 9 N.Y.3d at 267. "[P]arties cannot create ambiguity from whole cloth where none exists, because provisions 'are not ambiguous merely because the parties interpret them differently.'" *Universal Am. Corp.*, 25 N.Y.3d at 680 (quoting *Mount Vernon Fire Ins. Co. v. Creative Hous.*, 88 N.Y.2d 347, 352 (1996)); *White*, 9

---

[5] Pennsylvania's choice of law rules apply. *See Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988) (noting that in a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied"). "Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made." *Pilosi*, 393 F.3d at 360-361. In most cases, an insurance contract is deemed to have been "made" in the state where the policy is delivered to the insured or the state from which the insured pays its premiums. *Id.* (citing *Ruhlin v. N.Y. Life Ins. Co.*, 106 F.2d 921, 923 (3d Cir. 1939)); *see also i2i Optique LLC v. Valley Forge Ins. Co.*, No. 20-3360, 2021 WL 268645, at *1 n.2 (E.D. Pa. Jan. 27, 2021) ("In the absence of proof as to the place of delivery [of an insurance policy], there is a presumption of delivery at the residence of the insured."). Here, the Policy was delivered to the Plaintiff, a citizen of New York, in New York. *See* Am. Compl. at ¶ 4; *see also id.*, Ex. 1 at 6 (noting insured's New York mailing address). The Policy also explicitly states that it "becomes effective and expires . . . at [Plaintiff's] mailing address." Am. Compl., Ex. 1 at 6. Moreover, New York's interest in the application of its law is great: the insured property is in New York; the alleged business losses were suffered in New York; Plaintiff is a citizen of New York; and the governmental Orders discussed in the Amended Complaint were issued in New York. For these reasons, New York law applies.

N.Y.3d at 267. The "lack of a definition" alone also does not render a term ambiguous. *Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 136 A.D.3d 52, 56 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 675 (2017).

Under New York law, the policyholder bears the initial burden of showing that the insurance contract covers the loss. *See Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (1st Dep't 2002). Only if the policyholder meets this initial burden does the burden of proof shift to the insurer to demonstrate that a policy exclusion applies. *Roundabout Theatre*, 302 A.D.2d at 6.

## IV.   ARGUMENT

### A.   Plaintiff Is Not Entitled to Business Income, Extra Expense, or Dependent Property Coverage

The clear and unambiguous terms of the Policy do not provide coverage for Plaintiff's alleged losses. Even though Plaintiff already amended its pleading in response to Valley Forge's earlier motion to dismiss, Plaintiff still does not plausibly allege the requirements to trigger coverage; namely, that there has been a "direct physical loss of or damage to" insured property or a related dependent property. Plaintiff instead seeks coverage for its loss of use of the Covered Property or unidentified dependent properties following the Orders issued in response to the COVID-19 pandemic. As New York courts have already opined, coverage does not flow based on this theory of loss.

#### 1.   The Amended Complaint lacks factual allegations to establish a direct physical loss of or damage to either the Covered Property or any Dependent Property

Plaintiff's Policy provides Business Income and Extra Expense Coverage only for losses resulting from "direct physical loss of or damage to property." *See, e.g.*, Am. Compl., Ex. 1 at 20 ("We will pay for direct physical loss of or damage to Covered Property."); 42 (similar). It also

provides Dependent Property coverage for losses stemming from "direct physical loss or damage at the premises of a [d]ependent [p]roperty." *Id.* at 142. Plaintiff is not entitled to coverage under either provision here because its claimed loss, the temporary loss of use of property, did not result from a direct ***physical*** loss of or damage to the Covered Property or any specific dependent property. *Id.* This, standing alone, warrants dismissal.

For loss or damage to be "physical," under the plain and ordinary meaning of that word, the loss or damage must be "tangible" or "material." *See*, *e.g.*, Black's Law Dictionary, *physical* (11th ed. 2019) (defining "physical" in part as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). Therefore, the "requirement that [a] loss be 'physical,' . . . is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Couch on Insurance § 148:46 (3d ed. 2020) (emphasis added). New York courts agree that the "critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

It also is well settled under New York law that mere "loss of use" of one's business does not trigger coverage under policies that require direct physical loss of or damage to property. Indeed, recent decisions from courts interpreting New York law have overwhelmingly considered and rejected coverage claims, like the one asserted by Plaintiff here, related to the COVID-19

pandemic premised on a mere loss of use.[6] For example, in *10012 Holdings v. Sentinel Insurance Co.*, an art gallery and dealer sought coverage for alleged business losses after it suspended operations in response to state and local orders limiting non-essential business operations during the COVID-19 pandemic. 2020 WL 7360252, at *1. As here, the policy required "direct physical loss of or physical damage to" property to trigger business income and extra expense coverage. *See id.* The court held that under New York law allegations of "loss of use" do not meet that standard. *Id.* at *2-3. Further, in granting the insurer's motion to dismiss with prejudice, the court noted that "[n]othing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders" caused direct physical loss of or damage to property. *Id.* at *2. Plaintiff's claims here suffer from the same defects.

Similarly, in *Michael Cetta, Inc. v. Admiral Indem. Co.*, the owner of a Manhattan restaurant sought coverage for alleged losses due to the restaurant's closure in response to state and local civil orders limiting restaurant operations during the COVID-19 pandemic. 2020 WL 7321405 at *1-3. The court dismissed plaintiff's claim, stating: "Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'" *Id.* at *6; *see also Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-754, 2020 WL 7867553, at *4

---

[6] *See, e.g.*, *Kim-Chee*, 2021 WL 1600831 at *3 ("In an unbroken line of trial court decisions, federal courts applying New York law have ruled that the closure of businesses due to the suspected presence of the virus or due to New York State executive orders do not qualify as direct physiclal loss or damage."); *Rye Ridge*, 2021 WL 1600475 at *2 ("The requirement of physical damage is not satisfied by the mere loss of use."); *JD Cinemas, Inc. v. Northfield Ins. Co.*, No. 609910/2020 (N.Y. Sup. Ct. Mar. 8, 2021) (attached as Ex. E); *Food For Thought*, 2021 WL 860345 at *6-7; *Dressel,* 2021 WL 1091711, at *4; *Harvey*, 2021 WL 1034259 at *6; *Demoura*, 2021 WL 848840 at *5-6; *Visconti Bus Service LLC v. Utica National*, No. EF005750-2020, 2021 WL 609851, at *4 (N.Y. Super. Ct. Feb. 12, 2021); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, No. 605985/2020 (N.Y. Sup. Ct. Feb. 10, 2021) (attached as Ex. F); *10012 Holdings*, 2020 WL 7360252 at *1; *Michael Cetta*, 2020 WL 7321405 at *8.

(W.D.N.Y. Dec. 29, 2020) (recommending dismissal of claims for losses resulting from state orders because "plaintiffs cannot plausibly allege that" its losses were "the result of direct physical loss of or damage to covered property as required to establish coverage").

These recent decisions are not cabined within the federal courts. New York state courts have reached the same conclusion. *See, e.g.*, *JD Cinemas*, No. 609910/2020 (N.Y. Sup. Ct. Mar. 8, 2021) (attached as Ex. E); *Visconti Bus Service*, 2021 WL 609851, at \*4; *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, No. 605985/2020 (N.Y. Sup. Ct. Feb. 10, 2021) (attached as Ex. F). In *Visconti Bus Service*, for example, the owner of a fleet of transportation vehicles pursued coverage related to the loss of use of its facilities following the pandemic and related government orders. 2021 WL 609851 at \*1. The court denied plaintiff's coverage claim premised on its policy's business income and extra expense provisions because such "coverage is triggered only by direct physical loss or damage to the covered property itself." *Id.* at \*4. Mere loss of use was not enough. *Id.*

*Michael Cetta*, *10012 Holdings*, and the recent state court decisions were not conceived out of whole cloth. Rather, they were supported by bedrock precedent concerning the interpretation of similar insurance policies under New York law. For example, in *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*, a law firm sought to recover alleged loss of business income and extra expenses resulting from its inability to access its office due to a preemptive power outage in anticipation of Superstorm Sandy. 17 F. Supp. 3d at 324-25. In dismissing the firm's claim, the court held that the "preemptive closure" of its building did not constitute "direct physical loss or damage" under the policy or New York law. *Id.* at 329-30. Specifically, the court explained: "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than

12

forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.* at 331.

The court's decision in *Roundabout Theatre Co. v. Continental Casualty Co.* is also instructive. There, the court held that a street closure that precluded access to a theater did not constitute "direct physical loss or damage to the [insured's] property," as required to trigger coverage under a similar provision as Plaintiff's Policy. 302 A.D.2d at 2, 7. In fact, the court specifically rejected the theater's contention that business interruption expenses stemming from "loss of use" alone were eligible for coverage, observing that "the [policy] is limited by the phrase 'caused by the perils insured against,' which, as noted, requires 'direct physical loss or damage to the [insured's] property.'" *Id.* at 7. The court explained "the fact that a loss was fortuitous under an 'all-risk' policy does not automatically imply that such defects were covered by the policy; the 'direct physical loss' language in the policy provides a further limitation on the types of fortuitous loss covered." *Id.* at 6.

As the following representative list demonstrates, a majority of other courts addressing coronavirus-related coverage claims have reached the same conclusion that (1) an insured must allege some form of actual, physical damage to the insured property to trigger loss of business income and extra expense coverage and (2) mere "loss of use" does not trigger coverage under policy provisions that require direct physical loss of or damage to property.

- ▪ ***Alabama***:  In a case against an affiliated insurer with similar operative policy language, the court rejected plaintiff's argument that an "inability to use its property constitutes a direct physical loss," finding that the "[order] did not immediately cause some sort of tangible alteration to Plaintiff's office." *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 20-275, 2020 WL 6163142, at *7-8 (S.D. Ala. Oct. 21, 2020).

- ▪ ***California***: "[L]oss of the ability to continue operating [insured's] business as a result of the government orders" did not qualify as direct physical loss of or damage to property.  *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020); *see also Selane Prods., Inc. v. Cont'l Cas. Co.*, No. 20-07834, 2020 WL 7253378, at *4 (C.D. Cal. Nov. 24, 2020) (holding same

13

in a case against an affiliated insurer with similar operative policy language); *O'Brien Sales and Mktg., Inc. v. Transp. Ins. Co.*, No. 20-02951, 2021 WL 105772, at *3 (N.D. Cal. Jan. 12, 2021) (same); *Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-1195, 2021 WL 1112710, at *2-3 (S.D. Cal. Mar. 17, 2021) (same insurer).

▪ *Florida*: Plaintiff's claim of direct physical loss based on his inability to "operate [his business] for its intended purpose" was insufficient. *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *5, *7 (S.D. Fla. Aug. 26, 2020); *see also S. Florida ENT Assocs., Inc. v. Hartford Fire Ins. Co.*, 20-23677, 2020 WL 6864560, at *7 (S.D. Fla. Nov. 13, 2020) (relying on *Newman Myers* in holding that "courts have found [closures based on government orders] to be insufficient to state a claim because there must be some allegation of actual harm").

▪ *Georgia*: Governor's Executive Order issued in response to COVID-19 pandemic "did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change." *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-2939, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020); *see also K D Unlimited Inc. v. Owners Ins. Co.*, No. 20-2163, 2021 WL 81660, at *4 (N.D. Ga. Jan. 5, 2021) ("Multiple courts have now considered and rejected the Plaintiff's loss of use theory in the COVID-19 business interruption context.").

▪ *Illinois*: "'[D]irect physical loss' [] unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020).

▪ *Minnesota*: Holding in a case against an affiliated insurer with similar operative policy language that "[t]he weight of authority is nearly unanimous that state orders restricting business operations because of the pandemic are not covered under the policy provisions at issue here." *Torgerson Props. Inc. v. Cont'l Cas. Co.*, No. 20-2184, 2021 WL 615416, at *1 (D. Minn. Feb. 17, 2021).

▪ *Mississippi*: "Plaintiff's Complaint fails to state a claim because it does not allege any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property." *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-00087, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020).

▪ *Missouri*: Holding in a case against an affiliated insurer with similar operative policy language that a "loss of use alone is insufficient" to trigger business interruption coverage, and that "stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property." *BBMS, LLC* v. *Cont'l Cas. Co.*, No. 20-03530, 2020 WL 7260035, at *4-5 (W.D. Mo. Nov. 30, 2020).

▪ *New Jersey*: "Plaintiff has not alleged any facts that support a showing that its property was physical damaged. Instead, Plaintiff pleads that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses. This is not enough." *Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020); *see also Arash Emami, M.D., P.C., Inc. v. CNA*, No. 20-18792, 2021 WL 1137997, at *2 (D.N.J. Mar. 11, 2021) (holding same in a case against an affiliated insurer with similar operative policy

language).

- ▪ *New Mexico*: Holding in a case against an affiliated insurer with similar operative policy language that coverage was unavailable for Plaintiff's claimed loss, which was "based purely on economic loss as a result of the closure orders." *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, No. 20-354, 2021 WL 601880, at *7 (D.N.M. Feb. 16, 2021).

- ▪ *Pennsylvania*: "To constitute direct 'physical loss' . . . economic loss resulting from an inability to utilize a premises as intended must (1) bear some causal connection to the physical conditions of that premises, which conditions (2) operate to completely or near completely preclude operation of the premises as intended." *4431, Inc. v. Cincinnati Ins. Co.*, No. 20-4396, 2020 WL 7075318, at *10 (E.D. Pa. Dec. 3, 2020); *see also Clear Hearing Solutions, LLC* v. *Cont'l Cas. Co.*, No. 20-3454, 2021 WL 131283, at *7 (E.D. Pa. Jan. 14, 2021) (granting summary judgment in a case against an affiliated insurer with similar operative policy language).

Here, Plaintiff has failed to allege facts to plausibly establish a *physical* loss of or damage to property necessary to trigger coverage. Plaintiff instead relies entirely on the mistaken belief that a temporary cessation of its business and its inability to access unspecified dependent properties constitutes the necessary physical loss to trigger coverage under the Policy. *See, e.g.*, Am. Compl. at ¶ 73 ("Plaintiff was forced to suspend operations of its business."); ¶ 81 (noting dependent properties were rendered "unusable in the way that they had been used before the pandemic," and the virus "caused a suspension of business operations at the properties."); ¶ 82 (explaining Plaintiff was unable to "operate [its] business normally"). Plaintiff's support for this proposition hinges on decisions by foreign courts in the United Kingdom, France, Australia, and South Africa. Am. Compl. at ¶¶ 56-58. But Plaintiff did not purchase a policy in London, Paris, Sydney, or Cape Town. It purchased the Policy in New York. Accordingly, New York law governs this action. Under the plain terms of the Policy and New York law, Plaintiff's alleged temporary inability to use its property or a dependent property is simply not sufficient to trigger coverage.[7]

---

[7] Further confirming that the Policy does not cover the alleged "loss of use" of the Covered Property or any dependent property due to the Orders, the Policy expressly excludes "loss or damage caused by or resulting from delay, loss of use or loss of market." Am. Compl., Ex. 1 at 25; *see also, e.g.*, *Selane*, 2020 WL 7253378, at *6 (finding loss of use excluded); *Mortar & Pestle*

*See, e.g.*, *Newman Myers*, 17 F. Supp. 3d at 331; *Rye Ridge*, 2021 WL 1600475 at *2 ("The requirement of physical damage is not satisfied by the mere loss of use."); *10012 Holdings*, 2020 WL 7360252, at *2 ("[C]ourts have declined to interpret such language [direct physical loss of or physical damage to property] to include 'loss of use' of the property under New York law."); *Michael Cetta*, 2020 WL 7321405, at *6 ("Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'"); *Roundabout Theatre*, 302 A.D.2d at 7 (rejecting interpretation that "the phrase 'loss of' must include 'loss of use of'"). The Amended Complaint should therefore be dismissed with prejudice.

Moreover, to the extent Plaintiff intends to rest its claim on the Dependent Property provision, Plaintiff has not alleged a single dependent property that suffered a direct physical loss or damage as a result of the COVID-19 pandemic. Plaintiff's vague allegation that "the property of one of [its] clients" could constitute a dependent property and that it could not safely access unidentified dependent properties "due to the COVID-19 Pandemic" is insufficient. Am. Compl. at ¶¶ 12, 73, 75. Plaintiff was required to specifically allege a dependent property, suffering a physical loss or damage, that caused a covered loss. *See, e.g.*, *BBMS v. Cont'l Cas. Co.*, (W.D. Mo. Nov. 30, 2020) (finding "general allegations that [the COVID-19 pandemic] resulted in losses due to . . . closures of dependent businesses, does not make [a dependent property] claim viable because it is a 'threadbare recital' . . . that *Iqbal* counsels is insufficient."). It did not.

Nor can Plaintiff trigger Dependent Property coverage by alleging unidentified dependent properties were "contaminated by the coronavirus." Am. Compl. at ¶ 79. This is because "the

---

*Corp. v. Atain Specialty Ins. Co.*, No. 20-03461, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020) (same).

presence of the virus itself, or of individuals infected [with] the virus, at [p]laintiff['s] business premises or elsewhere do not constitute direct physical losses of or damage to property." *Pappy's Barber Shops, Inc.* v. *Farmers Grp., Inc.*, No. 20-907, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020); *see, e.g., Kim-Chee*, 2021 WL 1600831 at *4 ("Virus particles . . . multiply within a host such as a human being, but they do not last long on their own in the atmosphere. They are invisible. They do not alter the characteristics of the covered property in any way . . . . The building itself remains unharmed by the virus and would be safe to occupy except for the arrival of people who bring new sources of infection."); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, No. 20-701, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021) ("[T]he presence of the novel coronavirus at the [property] would still not qualify as "physical damage."); *Tappo of Buffalo*, 2020 WL 7867553, at *4 ("[E]ven assuming that the virus physically attached to covered property, as plaintiffs allege in the instant case, it did not constitute the direct, physical loss or damage required to trigger coverage because [its] presence can be eliminated by routine cleaning and disinfecting.") (quotations omitted); *Sandy Point Dental*, 2020 WL 5630465, at *3 ("The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property."). Thus, even under this theory of physical loss of or damage to property, Plaintiff's coverage claim fails.

Because Plaintiff has not alleged that its property, or a specific dependent property, was subject to direct physical loss or damage, the Amended Complaint should be dismissed.[8]

---

[8] Plaintiff should not be permitted to avoid the clear and unambiguous language of the Policy by reference to the reasonable expectations doctrine or this Court's decision in *Humans & Resources, LLC v. Firstline Nat'l Ins. Co.*, No. 20-2152, 2021 WL 75775, at *6-7 (E.D. Pa. Jan. 8, 2021). *See* Am. Compl. at ¶ 25. Application of this doctrine would be erroneous for at least two reasons. ***First***, Plaintiff does not seek a declaration that the Policy fails to accord with its reasonable expectations. ***Second***, New York, not Pennsylvania, law governs this action. Under New York law, the doctrine only applies following a showing that an insurance policy is ambiguous.

### 2.   Plaintiff does not allege a period of restoration

The notion that the Policy requires tangible, physical loss or damage to trigger coverage finds further support in the fact that the Policy allows recovery of lost business income and extra expense only for the "period of restoration." Am. Compl., Ex. 1 at 37 (defining "period of restoration"); 42 ("[W]e will pay for the actual loss . . . during the 'period of restoration.'"); 142 ("[Y]ou may extend that insurance to the actual loss of Business Income you sustain . . . during the 'period of restoration'"). The Policy's restriction of coverage to the period where the insured property is not "repaired, rebuilt or replaced" confirms that a "physical" alteration must take place, and that without direct ***physical*** loss of or damage to property (*i.e.*, a loss remedied by a repairing, rebuilding, or replacing property), there is no coverage at all. *Id.* at 37; *see Roundabout Theatre Co.*, 302 A.D.2d at 7-8 (noting that the period of restoration provision "support[s] the conclusion that coverage is limited to instances where the insured's property suffered direct physical damage"); *Hillcrest Optical*, 2020 WL 6163142, at *8 (dismissing claim for business interruption coverage in part because "[i]t is apparent" that the period of restoration language "contemplates the tangible alteration of property" and noting plaintiff "was not dispossessed of its property due to the Order, nor was there any tangible alteration to it"); *Clear Hearing*, 2021 WL 131283, at *7 (finding "mere loss of use counting as 'direct physical loss of' property does not make sense in relation to the 'period of restoration' language"). Because the Amended Complaint contains no

---

*McCarthy v. Am. Int'l Grp.*, 283 F.3d 121, 124 (2d Cir. 2002) ("Unambiguous terms are to be given their plain and ordinary meaning, and ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract." (cleaned up)). As detailed above, and as this Court itself recognized in *Humans & Resources*, the phrase "direct physical loss of or damage to" property is not ambiguous, and does not cover an insured's claims for "economic loss resulting from [an] inability to operate [its] premises as intended," unless "the loss and the bar to operation from which it results . . . bear a causal relationship to some *physical condition* of or on the premises." *Humans & Resources*, 2021 WL 75775, at *7 (emphasis in original).

allegations concerning the "period of restoration," no coverage can follow, and dismissal is warranted.

**B.      Plaintiff Is Not Entitled to Civil Authority Coverage**

Plaintiff's claim for Civil Authority coverage also fails. To obtain coverage under the Policy's Civil Authority endorsement, Plaintiff must plausibly allege that (1) the Orders were issued due to "direct physical loss of or damage to property at locations, other than [the insured] premises" and (2) the Orders "prohibit[ed] access" to Plaintiff's premises. Am. Compl. Ex. 1 at 66. Plaintiff fails to do so here. Accordingly, dismissal is warranted.

**1.      Plaintiff does not allege the Orders were issued due to a direct physical loss of or damage to property other than the insured property**

Courts routinely dismiss claims for civil authority coverage where, as here, a plaintiff does not allege facts describing how a location other than the covered property suffered direct physical loss or damage. *See, e.g., Food For Thought Caterers*, 2021 WL 860345, at *6-7 ("[G]eneralized statements cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged. As a result, such speculative assertions do not trigger Civil Authority coverage"); *Michael Cetta,* 2020 WL 7321405, at *11 ("Without specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face as to . . . civil authority coverage"). Here, as discussed in Section I(A)(1) *supra*, Plaintiff does not allege direct physical loss of or damage to *any* property, much less to any property near Plaintiff's insured location. This is dispositive. *See*, *e.g.*, *Food For Thought Caterers*, 2021 WL 860345, at *6-7; *Michael Cetta*, 2020 WL 7321405, at *11-12; *Sandy Point Dental*, 2020 WL 5630465, at *3 ("Just as the coronavirus did not cause direct physical loss to plaintiff's property, the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property.").

Plaintiff is also unable to establish that the orders were issued *due to* direct physical loss of or damage to property other than the insured property. As Plaintiff acknowledges, it is apparent from the face of the Orders that they were issued to limit the spread of COVID-19. *See* Am. Compl. at ¶ 77; *Kim-Chee*, 2021 WL 1600831 at *7 (finding no coverage for civil authority where plaintiff "d[id] not allege the executive orders were triggered by 'direct physical loss or damage to other property.'"). Even if COVID-19 exposure could cause property damage (it cannot), an order seeking to prevent the *future* spread of illness cannot establish the necessary loss to give rise to a Civil Authority claim. *See United Air Lines v. Ins. Co. of. Pa.,* 439 F.3d 128, 134-35 (2d Cir. 2006) (concluding that civil authority coverage was unavailable for insured airline at Washington, D.C. airport when flights were halted after 9/11 attacks, because "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks"); *see also Food For Thought Caterers*, 2021 WL 860345, at *6 (explaining that an order issued "to limit the risk of spreading the Covid-19 virus … simply does not implicate Civil Authority coverage."). As such, dismissal is warranted.

### 2. Plaintiff does not plausibly allege that the Orders prohibited access to the covered property

Plaintiff does not—and cannot—plausibly allege that the Orders "prohibited access" to its property. New York law is clear that, for civil authority coverage to apply, access to the covered premises must be "prohibited," which unambiguously requires a *complete bar* to entry. *See Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.,* 308 F. Supp. 2d 331, 335-37 (S.D.N.Y. 2004); *54th St. Ltd. Partners LP v. Fidelity & Guar. Ins. Co.,* 306 A.D.2d 67, 67 (1st Dep't 2003) (holding that a civil authority provision did not apply once access to premises was permitted, even though vehicular and pedestrian traffic to the premises was diverted); *see also Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* No. 09-02391, 2010 WL 2696782, at *1, *5 (M.D. Pa. July 6, 2010) (no

coverage when order closed main road that most patrons used to access ski resort). It is not enough that an order merely limited or discouraged access. *See, e.g.*, *Michael Cetta*, 2020 WL 7321405, at *12 ("[Plaintiff] has not alleged that access was ever denied completely to the restaurant or to the area immediately surrounding any neighboring damage property. . . . The fact that [Plaintiff] could have continued to operate its restaurant in some capacity is fatal to [its] claims for civil authority coverage."); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) ("[T]he Governor's orders limit, rather than prohibit, access to the property"). Yet that is all Plaintiff alleges here.

The Orders did not prohibit access to the Covered Property or any dependent property. *See generally*, Goldberg Decl., Exs. A-D (Orders dated March 7, 12, 20, and April 15, 2020, respectively). And Plaintiff cites no provision of the Orders to the contrary because no such provision exists. The cited Orders instead: (1) instructed non-essential businesses to reduce their in-person workforce; (2) limited non-essential gatherings; and (3) explicitly permitted use of property for purposes of providing "essential services and functions" to both essential and non-essential businesses. *See, e.g.*, Goldberg Decl., Ex. B ("Any large gathering or event for which attendance is anticipated to be in excess of five hundred people shall be cancelled or postponed."); *id*. ("Any place of business . . . for which attendance is anticipated to be fewer than five hundred people, shall operate at no greater than fifty percent occupancy."); *id.* at Ex. C  (further limiting in-person workforce and instructing that "[a]n entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function."); *id.* at Ex. D (requiring the use of a mask when in a public place and unable to maintain social

distancing).[9] Consistent with these Orders, Plaintiff has not alleged that access to either the Covered Property or any dependent property was fully barred. Any suggestion to the contrary is belied by the Orders and allegations in the Amended Complaint.[10] For example, Plaintiff alleges that properties were "unusable *in the way they had been used before the pandemic*" or "*substantially* unusable." Am. Compl. at ¶ 81. Plaintiff does not plausibly allege that the properties lost *all* use or that *all* access to the property was denied. *Id*. Stated differently, Plaintiff has admitted that access to and use of the Covered Property and related dependent properties was not "prohibited." For this reason, Plaintiff is not owed coverage under the Civil Authority Endorsement.

### C.    The Absence of a Virus Exclusion is Irrelevant

In an attempt to salvage its claim, Plaintiff alleges, in conclusory fashion, that the lack of a "Virus Exclusion to the Policy" entitles it to coverage. Am. Compl. at ¶ 16. This is false because the absence of an exclusion cannot create an affirmative right to coverage. "[E]ven in the absence of [a virus] exclusion, Plaintiff[] would still be required to show a 'direct physical loss,'" covered by the Policy. *Rose's 1, LLC v. Erie Ins. Exch.,* No. 20-2424, 2020 WL 4589206, at *5 (D.C. Super. Ct. Aug. 6, 2020); *see also Roundabout Theatre Co.,* 302 A.D.2d at 6, 9 (concluding that because the insured's loss was beyond the scope of coverage, there was no need to reach the question of whether particular exclusions applied); *Kim-Chee*, 2021 WL 1600831 at *8

---

[9] These Orders are integral to and explicitly relied upon in the Amended Complaint. *See, e.g.*, Am. Compl. at ¶¶ 60-63. The Orders may therefore be considered despite not having been attached to the Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

[10] Plaintiff's threadbare allegation that access was prohibited will not do, particularly here where it is belied by other allegations in the Amended Complaint. *See Twombly*, 550 U.S. at 555-56 (explaining that a plaintiff cannot state a claim based solely on "a formulaic recitation of the elements of a cause of action"), *see, e.g.*, Am. Compl. at ¶ 74.

("[O]mitting an ISO exclusion [e.g., the virus exclusion] does not increase the available coverage."); *4431, Inc.*, 2020 WL 7075318, at *13 n.18 ("The issue of exclusions is irrelevant as [p]laintiffs' claims do not fall within the scope of the [p]olicies'' coverage."). As detailed above, Plaintiff has failed to allege direct physical loss of or damage to property. *See supra* §§ I(A)-(B). Therefore, Plaintiff's "argument that there is no virus exclusion in the Polic[y] is irrelevant because the [Amended] Complaint does not meet its initial burden of pleading that the Polic[y] appl[ies]." *Rye Ridge*, 2021 WL 1600475 at *3; *see Roundabout Theatre*, 302 A.D.2d at 9 (concluding that because the insured's loss was beyond the scope of coverage, there was no need to reach the question of whether a particular exclusions applied).

Further, Plaintiff is wrong to suggest that the Policy does not contain an applicable exclusion. It does. The Policy expressly excludes "loss or damage caused by or resulting from . . . delay, loss of use or loss of market." Am. Compl., Ex. 1 at 25. That is, the Policy provides no coverage for the alleged "loss of use" of the Covered Property due to the Orders. *See, e.g.*, *Selane*, 2020 WL 7253378, at *6 (finding loss of use excluded); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, No. 20-03461, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020) (same).[11] Nevertheless, the Court need not address the scope of this or other applicable exclusions because Plaintiff has failed to allege that it suffered a loss that falls within any grant of coverage.

## V.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Amended Complaint should be dismissed in its entirety and with prejudice.

---

[11] The Policy also explicitly and unambiguously excludes loss or damage caused by "[c]ontamination by other than 'pollutants.'" Am. Compl., Ex. 1 at 25; *see also* Am. Compl. at ¶ 32 (alleging that "contamination" results in a direct physical loss).

Dated: May 5, 2021

Respectfully submitted,

*/s/ Matthew A. Goldberg*
Matthew A. Goldberg
Ilana H. Eisenstein
Nathan P. Heller
Timothy P. Pfenninger
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
Facsimile: (215) 656-3301
matthew.goldberg@us.dlapiper.com
ilana.eisenstein@us.dlapiper.com
nathan.heller@us.dlapiper.com
timothy.pfenninger@us.dlapiper.com

*Counsel for Defendant Valley Forge
Insurance Company*

24