IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JMR HOLDINGS,LLC, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff,*<br><br>v.<br><br>**VALLEY FORGE INSURANCE CO.,**<br><br>*Defendant.* | Case No. 2:21-cv-00839-JDW |

## MEMORANDUM

Words matter. When JMR Holdings LLC entered into an insurance contract with Valley Forge Insurance Company, the words of the policy defined the scope of coverage that JMR received. Those same words allowed Valley Forge to underwrite the policy and set a premium based on the risk that the coverage posed. Now, faced with the possibility that its policy does not provide coverage for the losses it incurred when the State of New York imposed shutdown orders to arrest the spread of COVID-19, JMR asks the Court to look past the words of its policy and to consider its "expectations" when it purchased the policy.

But the words of the policy are clear. The policy only covers losses due to **physical** damage or loss. And COVID-19 has not led to the physical loss of or damage to JMR's property. An almost unbroken line of cases using New York law, which applies here, have come to the same conclusion. In the face of that clear language, JMR's expectations, reasonable or not, do not offer a basis to rewrite the words of the policy. The Court will grant Valley Forge's motion to dismiss this case.

## I. BACKGROUND

### A. The Policy's Coverages

JMR Holdings operates a photography business out of an apartment in New York. It received commercial property insurance coverage from Valley Forge under a policy for a policy year from February 1, 2020, to February 1, 2021. Among other things, the Policy includes a Business Income and Extra Expense Endorsement that offers JMR Holdings coverage in the event of certain interruptions to its business. Relevant here, the Policy includes Business Income coverage, Dependent Property coverage, and Civil Authority coverage.

The Policy covers Business Income loss that JMR Holdings sustains "due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" if the suspension was "caused by direct physical loss of or damage to property at [the insured's] premises." (ECF No. 1, Ex. 1 at 42.) The Policy defines "suspension" as the "partial or complete cessation of [the insured's] business activities," and "operations" as "the type of [the insured's] business activities occurring at the described premises and tenantability of the described premises." (*Id.*, Ex. 1 at 37, 39.) The Policy defines the "period of restoration" as the "period of time that: [b]egins with the date of direct physical loss or damage" and "[e]nds on the earlier of[:] (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (*Id.*, Ex. 1 at 37.)

The Dependent Property Endorsement provides for lost business income incurred due to suspension of an insured's operations because of a "direct physical

loss or damage at the premises of" a dependent property. (*Id.*, Ex. 1 at 142.) The Endorsement defines dependent property as a "property operated by other whom you depend on to: a. Deliver materials or services . . . to you, or to others for your account (Contributing Locations); b. Accept your products or services (Recipient Locations); c. Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or d. Attract customers to your business (Leader Locations)." (*Id.*)

The "Civil Authority" provision covers loss of business income and extra expenses "caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." (*Id.*, Ex. 1 at 66.)

**B.     The Shutdown Orders**

In March and April 2020, New York issued sweeping stay-at-home orders to mitigate the further spread of COVID-19. Those Shutdown Orders referenced that one can transmit the virus through contact with surfaces and through exposure to airborne particles. As a result of these Orders, JMR Holdings had to suspend all operations. It filed a coverage claim for its operating expenses during the suspension period, arguing the Shutdown Orders forced it to suspend its business operations, which impacted the insured property and dependent properties. Valley Forge denied JMR's claim. It explained that JMR's loss did not satisfy the Policy's Business Income, Dependent Property, or Civil Authority coverage provisions.

### C. Procedural History

On April 21, 2021, JMR Holdings filed an Amended Complaint against Valley Forge for declaratory judgment. (ECF No. 16.) On May 5, 2021, Valley Forge filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.) That Motion is now ripe for decision.

## II. LEGAL STANDARD

A district court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

A claim has facial plausibility when the complaint contains factual allegations that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In doing so, the court must "draw on its judicial experience and common sense." *Id.* Under the governing "pleading regime[,]" a court confronted with a 12(b)(6) motion must take three steps. First, it must identify the elements needed to set forth a particular claim. *Id.* at 878. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The court must "construe those truths in the

light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citations omitted).

### III.   DISCUSSION

The parties agree that New York law governs this diversity action. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties' memoranda of law assume that New York law governed the issues); *accord N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 485 F. Supp. 3d 398, 404 n.5 (S.D.N.Y. 2020). Under principles of New York contract interpretation, "the court's initial task is to attempt to ascertain the parties' intent from the language of the insurance contract itself . . . constru[ing] the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract." *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67, 74 (1st Dep't 2020) (internal citation omitted). Courts must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 73 N.Y.S.3d 113, 120 (2018). "[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists." *Chiarello ex rel. Chiarello v. Rio*, 59 N.Y.S.3d 129, 131 (2d Dep't 2017) (alteration in original). "[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy." *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (internal citations omitted).

The Business Income, Civil Authority, and Dependent Property provisions of the Policy all require "direct physical loss or damage at the premises" to trigger coverage. (ECF No. 1, Ex. 1 at 37, 66, 142.) The qualifiers "direct" and "physical" indicate that the "loss of or damage to property" that the Policy contemplates is restricted to damage or losses that are direct and physical in nature, and does not include "forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014). It requires **physical** damage or loss to the insured properly itself as a condition for coverage. *See Roundabout Theatre Co. v. Continental Cas. Co.*, 751 N.Y.S. 2d 4, 8 (2002) (no coverage for property damage at neighboring property resulting in street closure). For loss or damage to be "physical," under the plain and ordinary definition of that word, the loss or damage must be "tangible" or "material." *See, e.g.*, Black's Law Dictionary, physical (11th ed. 2019) (defining "physical" in part as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). Courts applying New York law commonly require proof of a change or alteration of the insured structure or property to establish that it suffered damage or loss. *See, e.g.*, *Iannucci v. Allstate Ins. Co.*, 354 F. Supp. 3d 125, 140 (N.D.N.Y. 2018). The presence of COVID-19 in the building does not create physical damage or loss to the property itself, merely the loss of use of the property, which is beyond the scope of coverage.

Supporting this interpretation, the Policy only pays Business Income coverage during a period of restoration. The Policy defines the "period of restoration" as the "period of time that: [b]egins with the date of direct physical loss or damage" and

6

"[e]nds on the earlier of (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (ECF No. 1, Ex. 1 at 37.) These provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The COVID-19 pandemic does not fall within that definition. The Parties' agreement to measure the period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy.

Other courts applying New York law to identical or substantially similar language have almost uniformly agreed with this interpretation of the Policy's coverage. As these courts have found, this type of loss falls outside the scope of the Policy because it does not result from any direct, physical compromise to the integrity of the insured property. *See, e.g.*, *Deer Mountain Inn LLC v. Union Ins. Co.*, No. 120CV0984BKSDJS, 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175-83 (S.D.N.Y. 2020); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 485-88 (S.D.N.Y. 2020); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-cv-754, 2020 WL 7867553, at *3-4 (W.D.N.Y. Dec. 29, 2020); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 907-15 (2021); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 142 N.Y.S.3d 724, 735-36 (2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3418, 2021 WL 860345, at *3-5 (S.D.N.Y. Mar. 6, 2021); *Alexandre B. Demoura, M.D., d/b/a New York Spine Inst., Inc. v. Continental Cas. Co.*, No. 20-cv-2912, 2021 WL 848840, at *4-6

(E.D.N.Y. Mar. 5, 2021); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-cv-2777, 2021 WL 1091711, at *3-5 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3350, 2021 WL 1034259, at *5-12 (S.D.N.Y. Mar. 18, 2021); *but see Kingray Inc. v. Farmers Grp. Inc.*, No. 20-cv-9632, 2021 WL 837622, at *7-8 (C.D. Cal. Mar. 4, 2021) (applying New York law and finding that "direct physical loss of or damage to property" language is ambiguous and could include a beauty salon's temporary dispossession of its property due to New York's Closure Orders, but not addressing the applicability of *Roundabout*, *Newman Myers*, or recent COVID-19 cases).

The "period of restoration" language is also materially similar to the language in other cases, which courts have commonly found "suggests [that the 'direct physical loss of or damage to property' covered by the Policy refers to] the occurrence of material harm that then requires a physical fix." *Michael Cetta, Inc.*, 506 F. Supp. 3d at 177 (citation omitted); *see also, e.g.*, *Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it"); *Deer Mountain Inn LLC*, 2021 WL 2076218, at *8; *Alexandre B. Demoura*, 20-CV-2912, 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("Because something must first be physically damaged in order to be 'restore[d] to a sound or good condition' or 'fix[ed]' it follows from the plain language of the Policy that 'physical loss of or damage to' requires a change to the real, tangible property at issue for coverage to apply.") (alterations in original).

JMR tries to avoid this conclusion by arguing that the Policy language is ambiguous. JMR does not point to any ambiguity in the language itself. Instead, JMR

8

argues that Valley Forge's interpretation of the Policy conflicts with JMR's expectations. But JMR's expectations don't matter when they conflict with the language of the Policy itself. To hold otherwise would permit courts to rewrite insurance policies at their whim. JMR also suggests that if the Policy does not provide coverage, then it is illusory. But the Policy offers coverage for direct, physical losses. It just doesn't offer coverage for losses resulting from COVID-19 Shutdown Orders.

## IV. CONCLUSION

JMR has the Court's sympathies for the losses it suffered as a result of the Shutdown Orders. It, like so many, is a victim of the COVID-19 pandemic. But that victimhood does not mean the Court can rewrite the insurance policy to which JMR and Valley Forge agreed. The Court will grant JMR's motion and dismiss this case. And, because nothing that JMR could allege would change that outcome, the Court will do so with prejudice. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 23, 2021